UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— X

THE SINGER GROUP, INC.,

           **Plaintiff,**

      - against -

NINE WEST HOLDINGS, INC.,

           **Defendant.**

———————————————————————— X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/30/15

**OPINION AND ORDER**

**14-cv-3619 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

       The Singer Group, Inc. ("Singer") brings this diversity action against

Nine West Holdings, Inc. ("Nine West"), alleging breach of contract and related

claims based on Nine West's termination of Singer's services pursuant to a Sales

Agreement (the "Agreement") in May 2013. Defendant moves for summary

judgment, arguing that plaintiff's claims fail as a matter of law pursuant to the

unambiguous terms of the Agreement. For the following reasons, defendant's

motion is GRANTED in part and DENIED in part.

## I.    BACKGROUND

       Singer is a distributor and manufacturer's representative engaged in

the business of selling various products to military markets and exchanges.[1]  Nine

West is in the business of designing, marketing, and selling branded footwear and

handbags.[2]  On November 11, 2005, Singer and Nine West entered into a sales

representation agreement through which Nine West retained Singer to solicit orders

for the sale of Nine West's products to certain military exchanges.[3]  Singer was

also required by the terms of the Agreement to:

- Write orders on individualized worksheets for the Military Exchanges with distros included
- Provide coordinators to merchandise selling floors and straighten stock rooms
- Meet with Buyers on a monthly basis
- Act as a daily liaison between [Nine West's] Account Executive and Account Coordinators and the appropriate individuals at the Military Exchanges
- Analyze business on a weekly basis
- Perform any other reasonably requested services to improve [Nine West's] businesses with the Military Exchanges[4]

---

[1]      *See* Plaintiff's Rule 56.1 Counter-Statement of Material Facts in Opposition to Defendant's Motion for Summary Judgment ("Pl. 56.1") ¶ 2.

[2]      *See id.* ¶ 5.  Nine West is the successor-in-interest to Nine West Footwear Corporation, the entity that signed the contract at issue in this case. *See id.* ¶ 3

[3]      *See id.* ¶¶ 6-7.

[4]      Agreement, Exhibit C to the 10/30/15 Declaration of Peter G. Goodman, counsel for defendant, in Support of Defendant's Motion for Summary Judgment, ¶ 5.

The Agreement further stipulates that "[a]ll advertising, sales, or other manufacturing matter or information, price lists, customers' lists, samples *or other material or data of any kind* . . . prepared by [Singer] on behalf of [Nine West] . . . shall remain [Nine West's] sole property . . . ."[5]  In exchange for these services, Singer was to be paid a five percent commission on the net paid sales of Nine West products from orders solicited by Singer.[6]  The Agreement permits either party to terminate by thirty days' written notice,[7] though such a notice of termination "shall not affect [the parties'] duties to perform [their] respective obligations as to matters arising prior to the termination date."[8]

      During Singer's tenure as Nine West's sales representative, Singer prepared a three-year business plan for Nine West that it believed would result in an increase in Nine West's sales.[9]  Singer then delivered this business plan to Nine

---

[5]     *Id.* ¶ 8 (emphasis added).

[6]     *See* Pl. 56.1 ¶¶ 9-10.

[7]     *See* Agreement ¶ 2.

[8]     *Id.*  The Agreement also contains a mandatory arbitration provision which, if invoked, would cover Singer's claims. *See id.* ¶ 11.  However, because neither party elected to abide by the terms of their own Agreement, this Court declines to enforce the arbitration clause *sua sponte. See Lejkowiiz v. Reissman*, No. 12 Civ. 8703, 2014 WL 925410, at *8 (S.D.N.Y. Mar. 7, 2014) (suggesting enforcement of an arbitration clause *sua sponte* is inappropriate where neither party explicitly requested arbitration).

[9]     *See* Pl. 56.1 ¶ 12.

West on March 1, 2013.[10]

On May 1, 2013, Nine West provided Singer with written notice of termination, effective May 31, 2013.[11]  In the intervening month, Nine West allegedly prevented Singer from carrying out certain activities relevant to its role as sales representative, including attending meetings, soliciting orders, and attending a large Fashion Footwear Association of New York trade event in May 2013.[12] However, while Singer allegedly was not permitted to solicit orders for May, it was still paid its contractual commission on the $730,330.16 in orders placed for the military exchanges by Nine West's in-house sales representatives for the month of May 2013.[13]  This is a more than fifty percent increase in value over the orders placed by Singer and Nine West's in-house sales representatives in May 2012, which totaled $483,935.20.[14]

## II.    LEGAL STANDARD

Summary judgment is appropriate where, "viewing the record in the light most favorable to the non-moving party . . . 'there is no genuine dispute as to

---

[10]     *See id.* ¶ 13.

[11]     *See id.* ¶ 14.

[12]     *See id.* ¶¶ II.1, II.3.

[13]     *See id.* ¶¶ 16-17.

[14]     *See id.* ¶ 18.

any material fact and the movant is entitled to judgment as a matter of law.'"[15]  "In making this determination . . . we resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."[16]  "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[17]

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact."[18]  To defeat a motion for summary judgment, the non-moving party must "'do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation.'"[19]

"'The function of the district court in considering the motion for

---

[15]    *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting Fed. R. Civ. P. 56(a)) (quotations omitted).

[16]    *Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015) (quotations omitted).

[17]    *Windsor v. United States*, 699 F.3d 169, 192 (2d Cir. 2012), *aff'd*, 133 S.Ct. 2675 (2013) (quotations and alterations omitted).

[18]    *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

[19]    *Robinson*, 781 F.3d at 44 (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)).

summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists.'"[20] "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"[21]

"It is well established that a court may not admit extrinsic evidence in order to determine the meaning of an unambiguous contract. . . . The proper interpretation of an unambiguous contract is a question of law for the court, and a dispute on such an issue may properly be resolved by summary judgment."[22] When a dispute involves the interpretation of an unambiguous contract, summary judgment is appropriate without prior discovery.[23]

## III.   APPLICABLE LAW

### A.   Implied Covenants of Good Faith and Fair Dealing

Under New York law, every contract contains an implied promise that "neither party to a contract shall do anything which has the effect of destroying or

---

[20]   *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (quoting *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010)).

[21]   *Crawford*, 758 F.3d at 486 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

[22]   *Omni Quartz, Ltd. v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir. 2002).

[23]   *See Wells Fargo Bank Northwest, N.A. v. Taca Int'l Airlines, S.A.*, 247 F. Supp. 352, 360 (S.D.N.Y. 2002).

injuring the right of the other party to receive the fruits of the contract."[24]
However, the covenant only applies "where an implied promise is so interwoven
into the contract as to be necessary for effectuation of the purposes of the
contract."[25]  In other words, a breach of the covenant is "merely a breach of the
underlying contract," and "cannot be used to create new contractual rights between
the parties."[26]  Moreover, "[t]he implied covenant does not extend so far as to
undermine a party's general right to act on its own interests in a way that may
incidentally lessen the other party's anticipated fruits from the contract."[27]

### B.    Fraud

When brought in tandem with a breach of contract claim, a fraud
claim may only proceed if the plaintiff can "(i) demonstrate a legal duty separate
from the duty to perform under the contract . . . (ii) demonstrate a fraudulent
misrepresentation collateral or extraneous to the contract . . . or (iii) seek special

---

[24]    *M/A-COM Sec. Corp. v. Galesi,* 904 F.2d 134, 136 (2d Cir. 1990).
*Accord Thyroff v. Nationwide Mut. Ins. Co.,* 460 F.3d 400, 407 (2d Cir. 2006); *511
West 232nd Owners Corp. v. Jennifer Realty Co.,* 98 N.Y.2d 144, 153 (2002).

[25]    *Thyroff,* 460 F.3d at 407 (internal quotations and citations omitted).

[26]    *Cohen v. Elephant Wireless, Inc.,* No. 03 Civ. 4058, 2004 WL
1872421, at *11 (S.D.N.Y. Aug. 19, 2004) (quotation marks and citations omitted).

[27]    *M/A-COM Sec. Corp.,* 904 F.2d at 136 (internal quotations and
citations omitted).

damages that are caused by the misrepresentation and [are] unrecoverable as contract damages."[28]

To prove fraud under New York law, "'a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the misrepresentation, and (4) the plaintiff suffered damage as a result of such reliance.'"[29] Where the claim is for fraud by omission, the plaintiff "must prove additionally that [defendant] had a duty to disclose the concealed fact."[30]

### C.   Breach of Contract

Under New York law, a breach of contract claim requires:  "(1) a valid contract;  (2) plaintiff's performance;  (3) defendant's failure to perform;  and (4) damages resulting from the breach."[31]  A breach of contract claim "that fails to

---

[28]     *Bridgestone/Firestone, Inc. v. Recovery Credit Servs, Inc.*, 98 F.3d 13, 20 (2d Cir. 1996).

[29]     *Id.* at 19 (quoting *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995)).

[30]     *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 180-81 (2d Cir. 2007).

[31]     *MeehanCombs Global Credit Opportunities Funds, LP v. Caesars Entm't Corp.*, Nos. 14 Civ. 7091, 14 Civ. 7973, 2015 WL 221055, at *3 (S.D.N.Y. Jan. 15, 2015) (citing *Diesel Props S.r.l. v. Grey Stone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011)).

allege facts sufficient to show that an enforceable contract existed between the parties is subject to dismissal.'"[32]  Thus, the plaintiff must plead facts showing that an enforceable contract existed, including facts surrounding the formation of the contract, such as the contract's date, major terms, names of the parties, and that the party to be bound actually assented to the contract.[33]  In addition, "[f]ailure to demonstrate [] non-speculative damages will result in summary judgment in favor of the defendant."[34]

### D.    Declaratory Judgment

A court may "declare the rights and other legal relations of any interested party seeking such a declaration" in "a case of an actual controversy."[35] An "actual controversy" exists if "there is a 'substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant declaratory judgment.'"[36]  In deciding whether to entertain a request for

---

[32]    *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008) (quotation marks and citation omitted).

[33]    *See id.*

[34]    *Nature's Plus Nordic A/S v. Natural Organics, Inc.*, 980 F. Supp. 2d 400, 414 (E.D.N.Y. 2013) (citing *Upper Deck Co. v. Breakey Int'l*, 390 F. Supp. 2d 355, 362 (S.D.N.Y. 2005)).

[35]    28 U.S.C. § 2201(a).

[36]    *Duane Reade, Inc. v. Saint Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir. 2005) (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*,

declaratory judgment, a court must consider "'(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty.'"[37]

## IV.   DISCUSSION

### A.   Breach of Covenant of Good Faith and Fair Dealing

Singer argues that Nine West breached the implied covenant of good faith and fair dealing between the parties when it induced Singer to produce a three-year business plan for Nine West and terminated the Agreement two months later.  This argument is predicated on the assumption that preparation of the business plan fell outside the scope of the Agreement, and that Nine West induced Singer to engage in this additional task while knowing it intended to terminate Singer shortly thereafter — depriving Singer of any benefits in the form of increased order volumes it may receive over the three-year course of the plan's implementation.

The plain text of the Agreement belies this assertion.  The Agreement specifies, *inter alia*, that Singer is to perform regular analyses of Nine West's sales business and perform other reasonably requested services as part of Singer's role

---

312 U.S. 270, 273 (1941)).

[37]   *Amusement Indus. v. Stern*, 693 F. Supp. 2d 301, 311 (S.D.N.Y. 2010) (quoting *Duane Reade*, 411 F.3d at 389)).

as sales representative.[38]  The Agreement further specifies that material or data *of any kind* produced by Singer on Nine West's behalf becomes the sole property of Nine West upon delivery.[39]  Plaintiff argues that preparation of the business plan falls outside the bounds of the Agreement, but provides no facts — facts that necessarily would be in Singer's possession, if they existed — to support its argument.  Singer at no time objected to Nine West's request for a business plan as unreasonable or outside the terms of the Agreement, demanded additional compensation for the completion of an extracontractual task, or requested assurances of its continuing role as sales representative in order to reap projected benefits from the business plan.  Indeed, the record indicates that Singer did precisely what a commissioned sales representative does: invested time and effort in order to increase its sales.  That time and effort resulted in a business plan that, upon completion and delivery to Nine West, became Nine West's property — again, in accordance with the unambiguous terms of the Agreement.

The implied covenant of good faith and fair dealing "'embraces a pledge that neither party shall do anything which will have the effect of destroying

---

[38]     *See* Agreement ¶ 5.

[39]     *See id.* ¶ 8.

-11-

or injuring the rights of the other to receive the fruits of the contract.'"[40]  In other words, the covenant "does *not* 'operate to create new contractual rights; it simply ensures that parties to a contract perform the substantive, bargained-for terms of their agreement and that parties are not unfairly denied express, explicitly bargained-for benefits.'"[41]  When Singer agreed to prepare a three-year business plan for Nine West, it knew it was operating under an Agreement with no guaranteed term, under which its only bargained-for benefit was commissions paid on orders booked.  A claim for breach of the implied covenant of good faith and fair dealing based on Singer's termination improperly writes an additional obligation into the Agreement — an obligation for Nine West to retain Singer for a period of time sufficient to enjoy the benefits of the business plan — that contradicts the Agreement's express termination clause.

Nine West acted entirely within the bounds of the Agreement by requesting a business plan from Singer, taking ownership of the business plan upon its completion, and terminating Singer two months later.  To the extent Singer believes this to be sharp practice on Nine West's part, it is sharp practice permitted

---

[40]     *In Touch Concepts, Inc. v. Cellco P'ship*, 949 F. Supp. 2d 447, 466 (S.D.N.Y. 2013) (quoting *511 West 232nd Owners Corp.*, 98 N.Y.2d at 153).

[41]     *Oscar de la Renta, Ltd. v. Mulberry Thai Silks, Inc.*, No. 08 Civ. 4341, 2009 WL 1054830, at *5 (S.D.N.Y. Apr. 17, 2009) (quoting *Don King Prods., Inc. v. Douglas*, 742 F. Supp. 741, 767 (S.D.N.Y. 1990) (emphasis in original)).

under the Agreement.  Singer has no claim for breach of the implied covenant of good faith and fair dealing, and summary judgment is granted in defendant's favor.[42]

### B.    Fraudulent Inducement

Singer argues that Nine West fraudulently induced Singer to create and deliver the business plan, while intending to replace Singer as Nine West's sales representative.  Singer has not alleged any facts that were misrepresented by Nine West in order to induce Singer to prepare the business plan, or any omissions of facts that Nine West was duty-bound to disclose.  While discovery might assist Singer in identifying such facts, summary judgment is still appropriate — as Singer's fraudulent inducement claim must fail regardless of its factual support.

Any alleged statements or omissions by Nine West regarding Singer's retention as sales representative are insufficient to sustain a fraud claim, as Singer cannot demonstrate reasonable reliance.  It is well-settled that a party to an agreement that may be terminated at any time cannot satisfy the requirement of reasonable reliance where the alleged fraud is based on representations of a

---

[42]    Summary judgment is also granted as to Count IV of the Complaint, in which plaintiff requests an injunction requiring defendant to cease and desist from using the business plan.  As the business plan is Nine West's property under the unambiguous terms of the Agreement, Singer has no basis to enjoin its use.

continued relationship.[43]  The Agreement unambiguously grants either party the ability to terminate their relationship at any time, and requires any changes to the Agreement to be made in writing.[44]  Accordingly, as a matter of law, Singer cannot establish that it would have been reasonable to rely on any representations regarding Singer's retention as sales representative.  Accordingly, Singer's fraud claim must be dismissed.

### C.    Breach of Contract

Singer's breach of contract claim is based not on the preparation and delivery of the business plan, but instead on Singer's assertion that after receiving written notice of the Agreement's termination, but prior to the effectiveness of the termination thirty days later, Nine West effectively froze Singer out of its role as sales representative.  Nine West argues that Singer received certain commissions during the thirty-day period between notice and termination, and that Singer is therefore incapable of demonstrating damages from this alleged breach as a matter of law.

There are disputed issues of material fact concerning Singer's ability to operate as Nine West's sales representative during the thirty-day period between

---

[43]    *See, e.g.*, *Kriegel v. Donelli*, No. 11 Civ. 9160, 2014 WL 2936000, at *12 (S.D.N.Y. June 30, 2014).

[44]    *See* Agreement ¶ 16.

notice and termination.  Nine West argues that even *if* Singer was entirely frozen out of booking orders on Nine West's behalf in its final thirty days of employ, it cannot demonstrate damages as a matter of law because it was paid commissions on the orders placed by Nine West's in-house sales representatives through May 2013.  However, it is undisputed that Singer received commissions on orders placed both by Singer *and* by Nine West's in-house sales representatives during the term of the Agreement.[45]  Singer may be able to demonstrate, through discovery, that its alleged exclusion from various trade events in the month of May resulted in a lost opportunity to book orders in addition to those orders placed by Nine West's in-house team, causing damage to Singer.  Because Singer may be able to support its claim for damages, summary judgment is inappropriate as to the breach of contract claim.[46]

### D.    Declaratory Judgment

Singer requests declaratory judgment "declaring the parties' respective rights and obligations with respect to all sales by [Nine West] to the Military Exchanges of womens' footwear and handbags and all related accessories

---

[45]    *See* Pl. 56.1 ¶¶ 15, 17.

[46]    Summary judgment is also denied as to Singer's claim for an accounting, which may be required depending on the outcome of the breach of contract claim.

. . . ."[47] Because such a judgment would serve no useful purpose in clarifying the legal issues remaining in this case or offer the parties relief from uncertainty, and because any remaining uncertainty regarding Singer's breach of contract claim will be resolved through discovery and trial, Nine West's motion for summary judgment as to declaratory relief is granted.

## V.    CONCLUSION

For the foregoing reasons, Nine West's motion for summary judgment is GRANTED as to Singer's claims for breach of the covenant of good faith and fair dealing, fraud, injunctive relief, and declaratory judgment, and DENIED as to Singer's breach of contract and accounting claims. The Clerk of the Court is directed to close this motion (Dkt. No. 24). A conference is scheduled for January 12, 2016 at 4:00 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            December 30, 2015

---

[47]      Complaint ¶ 64.

-16-

**–Appearances–**

**For Plaintiff:**

Jay Shapiro, Esq.
White & Williams, LLP
One Penn Plaza, Suite 4110
New York, NY 10019
(212) 244-1453

Douglas E. Ress, Esq.
Kaufman, Coren & Ress, P.C.
2001 market St, Suite 3900
Philadelphia, PA 19103
(215) 735-8700

**For Defendant:**

Peter G. Goodman, Esq.
Victor M. Metsch, Esq.
Smith, Gambrell & Russell, LLP
1301 Avenue of the Americas, 21st Floor
New York, NY 10019
(212) 907-9700

Roselvin Sanchez, Esq.
Smith & Brink, P.C
1325 Franklin Avenue
Garden City, NY 11530
(212) 907-9755